Charles D. RAGLAND, Revenue Commissioner, Revenue Division, Department of Finance and Administration *v.* PITTMAN GARDEN CENTER, INC. and Donald M. Pittman d/b/a Pittman Nurseries Company

89-59 772 S.W.2d 331

Supreme Court of Arkansas
Opinion delivered June 26, 1989
[Supplemental Opinion on Denial of Rehearing
October 9, 1989.*]

*Hickman, J., dissents.

*John H. Theis, Joe Morphew, Philip Raia, Robert L. Jones, William E. Keadle, Ricky L. Pruett,* and *David B. Kaufman,* by: *Cora L. Gentry,* for appellant.

*Anderson, Crumpler & Bell, P.A.,* for appellee.

STEELE HAYS, Justice. Arkansas law requires every employer to deduct and withhold state income taxes from the wages paid to employees. An exception is made "for agricultural labor," which is defined as including all services performed "on a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or *horticultural commodity* . . ."[1] (Our emphasis.) "Farm" is defined as including nurseries, greenhouses or similar structures used in raising agricultural or horticultural commodities.

---

[1] Ark. Code Ann. § 26-51-902(1) (1987). "Agricultural labor" means agricultural labor as defined in 26 U.S.C. § 3121 (g), on January 1, 1967; *and see Ragland* v. *Pittman Garden, et al.,* 293 Ark. 533, 739 S.W.2d 671 (1987).

Pittman Garden Center, Inc., and Donald M. Pittman, doing business as Pittman Nurseries Company, appellees, operate a nursery, and supply horticultural products and labor to Pittman Landscape Planners, Inc., a landscaping business in Magnolia, Arkansas, serving customers in southern and central Arkansas, as well as northern Louisiana. Employees of the appellees are engaged in raising horticultural commodities at appellees' nursery and are also engaged in landscape work for customers of Pittman Landscape Planners, Inc.

Appellant, Commissioner of Revenues, conducted income tax withholding audits of appellees' operations between January 1, 1982, and April 30, 1985. The audits resulted in the assessment of additional withholding taxes.

Both appellees protested pursuant to the Arkansas Tax Procedure Act,[2] contending the wages paid to their employees were exempt from withholding as "agricultural labor." On administrative review the assessments were sustained in their entirety and appellees filed suit in the chancery court of Columbia County. The chancellor held that the appellees were exempt from the requirements of state law for the withholding of income taxes, since appellees "were engaged in agriculture as defined by Arkansas law and the planting of products they have produced on private property is incidental to their farming operation." The Commissioner appealed and we reversed. See *Ragland* v. *Pittman Garden Center, et al.*, 293 Ark. 533, 739 S.W.2d 671 (1987) (*Ragland* I).

■■ Our decision in *Ragland* I explained that under Arkansas law "agricultural labor" is defined by referring to the federal social security law (FICA), where that term is defined. 26 U.S.C. § 3121(g) (1982). Noting that the exemption for wages paid to "agricultural labor" is not applicable to wages paid for landscaping, we posed the issue as being: How is the agricultural exemption affected when the duties of a particular employee consist of both agricultural and non-agricultural labor? The answer was found in 26 U.S.C. § 3121(c) (1982), which provides that the services performed by such employee "during one half or

---

[2] Ark. Code Ann. § 26-18-101 et seq. (1987).

more of any pay period" determines the nature of the employment. Hence, if employees of the appellees devote half or more of their time to agricultural labor during any pay period (a period of not more than thirty-one consecutive days) their wages are exempt from withholding. If, however, less than one half of such services are devoted to agricultural labor, then the exemption does not apply and the wages are subject to withholding taxes in accordance with the regulations of the Commissioner.

We remanded the case to the trial court to determine what percentage of the services performed by appellees' employees was agricultural and what percentage was landscaping consistent with our opinion in *Ragland* I. On remand the chancellor held that landscaping, a non-agricultural activity, began *after* the horticultural products were delivered to the customers' premises. On that basis the chancellor excluded the time required to transport the employees and horticultural products to the premises of the customer for the landscape work.

■ The Commissioner has again appealed. He submits that the non-agricultural labor should commence not when the employees arrive at the landscaping site, but when they *leave the nursery* to engage in activity that is not agricultural. We agree.

The chancellor elaborated on his conclusion in these words: "In said decision [referring to our opinion in *Ragland* I] it was determined that *only* after arriving with the horticultural products at the customer's premises (sometimes called the terminal market) for consumption did the employees engage in non-agricultural work." (Our emphasis.)

In seizing upon that language the chancellor read something into the *Ragland* opinion that we had not decided, nor been asked to decide. The issue in *Ragland* I did not involve, even peripherally, a consideration of the time spent in the transportation of employees between agricultural and non-agricultural job sites, but whether the agricultural exemption applied to employees whose services during any given pay period involved both agricultural and non-agricultural labor. It should be noted that the quoted language by the chancellor stresses the word "only," suggesting that in *Ragland* I we were making a calculated decision to exclude the time spent in transportation in determining whether non-agricultural services equaled or exceeded one

half of a pay period. No such inference was intended by our opinion in *Ragland* I, as that opinion in its entirety makes clear, and the word "only," it should be noted, does not appear in the passage alluded to. We were simply pointing out that work at the nursery was agricultural (and therefore exempt), whereas work at the premises of the landscape customer was non-agricultural and not exempt. The time spent between the two was not in any sense an issue either before the trial court or on appeal.

In defense of the decree, appellees contend the law of the case, as established in *Ragland* I, is that "the clock for time spent in agricultural labor stops when the employee arrives at the 'terminal market', i.e., the customer's premises, with the horticultural products, and starts to run again at the time the employee leaves the customer's premises." We could readily agree with that statement had that been the issue in the first appeal. But, as we have noted, it was not the issue we were deciding and was not, therefore, either the intended, nor inadvertent, holding of the case. Under those circumstances, the law of the case doctrine has no application. *Dickson* v. *Board of Directors of Long Prairie Levee District*, 151 Ark. 22, 235 S.W. 45 (1921). In *Dickson* we rejected a similar contention in reversing the chancellor a second time, using this language:

> In our judgment a decision rendered on appeal determines only such questions as are presented for decision and are decided as essential to a just disposition of the pending appeal. The language of a decision is always to be understood by applying it to the facts of the case decided and construing it with reference thereto. *Little Rock Trac. & Elec. Co.* v. *Kimbro*, 75 Ark. 211.

Nor was the time issue decided by the chancellor in the initial trial of this case. Had it been, appellant might well be confronted with the doctrine of the law of the case for failure to raise the question in the first appeal. *Alexander, Adm.* v. *Chapman, et al.*, 299 Ark. 126, 771 S.W.2d 744 (1989); *Meyers* v. *Meyers*, 214 Ark. 223, 216 S.W.2d 54 (1949).

Appellant's second point of error concerns the chancellor's reference to the appellees' proof as being "clear and convincing," whereas the correct standard of proof required of a taxpayer in establishing an entitlement to an exemption is

"beyond a reasonable doubt." *Qualls* v. *Georgia-Pacific Corporation*, 269 Ark. 426, 602 S.W.2d 646 (1980).

The appellees question appellant's right to raise that issue in this appeal, since the same wording appears in the decree from which the first appeal was taken but was not challenged by appellant in that appeal. In response, appellant cites a segment of his brief in the first appeal, but we find only a passing reference to the language of the *Qualls* case. Nothing in appellant's first appeal can be construed as raising this issue as a point for reversal and if that were the determinative factor for reversal, we would likely affirm the case. However, since the case is necessarily reversed on the first point, we see no need to decide whether the chancellor is locked into an erroneous standard under the law of the case doctrine. The difference between evidence that is "clear and convincing," as opposed to "beyond a reasonable doubt," may be little more than semantic and we doubt that it will have any practical effect on the outcome of this case. It is clear, or should be, that the law puts a pronounced burden on the taxpayer to establish entitlement to exemption from tax laws and regulations by proof that is conclusive.

Since the record presented is inadequate to enable us to determine whether the employees of the appellees are engaged in agricultural labor for at least half of any pay period, excluding periods of transportation, the case is again remanded to the chancellor to make that determination.

Reversed and remanded.

HICKMAN, J., dissents.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
OCTOBER 9, 1989

777 S.W.2d 222

STEELE HAYS, Justice. In our opinion of June 26, 1989, we rejected appellees' argument that the law of the case as established in *Ragland* I bars appellant's contention in this case (*Ragland* II) that the chancellor erred in holding that only after the employees arrived at the customer's premises did the employees engage in nonagricultural work.

■■ Appellees' petition for rehearing adamantly insists the issue was raised in the first case. In response, appellant argues, just as adamantly, that it was not. Having carefully reviewed the record and briefs of the first case, we find nothing in the pleadings, the testimony, the decree of the chancellor or our opinion in *Ragland* I suggesting that in determining whether appellees' employees came within the definition of "agricultural labor" the chancellor considered time spent in transporting such employees from their regular job site to the premises of appellees' customers, and therefore, the petition for rehearing is denied. We do agree with appellees that agricultural labor *may* include time spent in delivering products to market [26 U.S.C. § 3121(g)(4)(A)], provided, however, that the *primary purpose* of the transportation is the delivery of the product to market and is not merely incidental to landscaping services. *See* 26 C.F.R. § 780.206. Inasmuch as that issue has not been developed, we make no attempt on this record to determine whether the underlying purpose is the delivery of horticultural products to market, or

providing landscaping services to customers of appellees.

Petition for rehearing denied, supplemental opinion issued.

HICKMAN, J., dissents.