## CITY OF GREENSBORO v. R. J. WILLIAMS.

(Decided March 14, 1899).

### *Peddlers.*

A picture dealer, who contracts to sell pictures, has them sent out to him, delivers to the purchaser, and receives the price agreed upon beforehand, is no peddler.

CITY WARRANT for penalty for peddling without license, originating in Mayor's Court and heard upon appeal by *Timberlake, J.,* at Fall Term, 1898, of GUILFORD Superior Court, upon *Case Agreed.*

His Honor adjudged against the defendant, who appealed. Case Agreed appears in the opinion.

*Mr. Charles M. Stedman,* for defendant (appellant).
*Mr. A. M. Scales,* for appellee.

FURCHES, J.   This is a criminal proceeding, instituted by the City of Greensboro against the defendant upon the charge of violating its charter and ordinances against "peddlers and itinerant merchants."   On the trial the jury found a special verdict, as follows:

"That on the 16th day of June, 1898, R. J. Williams did sell a picture frame and picture in the City of Greensboro, North Carolina, without having any license to sell the same from the said city.   That some time prior thereto an agent of the Chicago Portrait Company made an executory contract with Mrs. J. E. DeLorme to furnish her with a portrait and frame of the manufacture of the Chicago Portrait Company, doing business in the City of Chicago, State of Illinois, to be subject to her approval, and any executory contract made by her to purchase not to be binding unless she afterwards approved of the frame when delivered to her. That in pursuance of the executory contract so made, the Chicago Portrait Company shipped to the City of Greensboro, N. C., several pictures and several frames in bulk, whereupon the defendant, R. J. Williams, acting for the Chicago Portrait Company, broke the bulk of the original package, consigned to the Chicago Portrait Company, Greensboro, N. C., and placed the pictures in the frames and sold and delivered one to Mrs. J. E. DeLorme, as aforesaid, and collected for the same in pursuance of the executory contract, heretofore alluded to.   That section 57 of the Charter of Greensboro, N. C., is as follows: 'That in addition to the subjects listed for taxation, the aldermen may levy a tax upon the following subjects, the amount of which tax, when fixed, shall be collected by the collector of taxes, and if not paid on demand, the same may be recovered by suit, or the articles upon which the tax is imposed, or any other property of the owner, may be forthwith distrained and sold to satisfy the same, namely:

" '(L) Upon all itinerant merchants or peddlers, vending or offering to vend, in the city, a license tax not exceeding fifty dollars a year, except such only as sell books, charts, or maps or wares of their own manufacture, but not excepting venders of medicine by whomsoever manufactured. Not more than one person shall peddle under a single license.'

"That the following is an ordinance duly passed by the Board of Aldermen under and by virtue of the foregoing section of said charter:

" 'Be it ordained by the Board of Aldermen of the City of Greensboro, that all itinerant merchants or peddlers, except such as sell books, charts or maps, whether sold by auctioneers or otherwise, and except further, goods of their own manufacture, but not except medicines by whomsoever manufactured, offering for same [sale] goods by sample or otherwise at retail in the town of Greensboro, shall pay a license tax of fifty dollars per year.

" 'Any person subject to this tax offering goods for sale without a license shall be fined $25 for each and every offense. License under this ordinance shall be issued by the tax collector and said license shall bear the date of the issue.'

"If, upon the foregoing facts, the Court shall be of opinion that the defendant is guilty, the jury say that he is guilty; otherwise they say that he is not guilty."

Upon this special verdict, the Court being of opinion that the defendant was guilty, the verdict was so entered and the defendant appealed from the judgment pronounced thereon.

It was stated on the argument that the case was intended to present the question of interstate commerce, and the constitutionality of the charter and ordinances of the plaintiff City. But it does not seem to us that the special verdict (by which we must be governed) raises these interesting and

troublesome questions, and we do not propose to raise or discuss them unless they were presented by the record and necessary to the determination of the appeal. The plaintiff's counsel on this branch of his case calls our attention to *Range Co. v. Carver,* 118 N. C., 328. There, we discussed at considerable length the doctrine of inter-state commerce and the constitutional question involved in that case; and if it was necessary that we should consider those questions in this appeal, we would probably be very much influenced by what is said in that case, but as they do not arise here, we do not consider or discuss them.

The only question presented by the special verdict is as to whether the defendant was an "itinerant merchant or peddler." Peddler is defined in all the leading lexicons and in many judicial decisions. But about the strongest and most favorable definition for the plaintiff we find, is that given in *Range Co. v. Carver, supra,* on p. 334: "Hawkers: Those deceitful fellows who went from place to place, buying and selling; .... and the appellation seems to grow from their uncertain wanderings, like persons that with hawks seek their game where they can find it." "Hawkers: Peddlers and petty shopmen; persons travelling from town to town with goods and merchandise." This quotation is from the opinion of Justice GRAY in *Emert v. Missouri,* 156 U. S., 309. And, even under this definition, we can not hold that the special verdict makes the defendant a peddler; nor does it constitute him an "itinerant merchant"—a *travelling* merchant, if there is a difference between a peddler and an "itinerant merchant." There is no finding—not even a suggestion—that he travelled about to sell pictures. Indeed this idea is negatived when it was found that the picture was sold before it was sent to him, and he only delivered it and received the price agreed upon beforehand. It seems to

us that, in the language of the late Chief Justice PEARSON, the plaintiff has "gotten the wrong sow by the ear." There is error.

Reversed.